GEORGE CALLARD *v.* ANN MATTHEWS—NANCY KOKERNOT, Third Opponent.

M. made her note for $15,000, and executed a mortgage to secure its payment, which was duly re-
corded. Subsequently, in lieu of this note, she made fifteen notes of $1000 each, payable at same
time and with like interest as the first note, and, by notarial act, the original mortgagee reserved
his rights under the first mortgage, to secure the payment of the series of notes. *Held :* That the
registry in the mortgage office of the latter act was not necessary to preserve the rights and lien,
granted by the first act of mortgage.

APPEAL from the Fourth District Court of New Orleans, *Reynolds,* J.
 *J. W. Duncan & Labatt,* for plaintiff and appellant.

 *W. H. Hagan,* for opponent, cited : C. C., Arts. 2181, 2, 3, 4, 6 ; *Palfrey* v.
*His Creditors,* 8 R., 278 ; *Citizens' Bank* v. *Suckler,* 8 R., 443.

 · SPOFFORD, J. This is a controversy between *George Callard,* plaintiff in exe-
cution, and *Nancy Kockernot,* third opponent, relative to the proceeds of certain
slaves which belonged to *Ann Matthews,* and were sold under the plaintiff's
execution.

The opponent claimed a higher privilege than the plaintiff, by reason of a
conventional mortgage recorded anterior to the registry of the plaintiff's judg-
ment in the proper mortgage office ; there was judgment in her favor, and the
plaintiff appeals.

The facts are thus stated by appellant's counsel :

"On the 25th March, 1851, *Ann Matthews* executed her promissory note for
the sum of $15,000, payable to her own order on the 25th March, 1852, with
interest at the rate of 8 per cent. per annum, if not paid at maturity : to secure
the payment of which she executed a mortgage on certain real estate and
slaves, in favor of *Benjamin Van Ostern,* which was recorded in the office of
mortgages on the same day.

"On the 25th April, 1851, thirteen days after the institution of the suit in
the Fourth District Court against her, she, (*Ann Matthews,*) by act before
Barnet, N. P., substituted fifteen promissory notes, for $1,000 each, sub-
scribed by her, payable to her own order on the 25th March, 1852, with
interest at 8 per cent. per annum, if not paid at maturity, for the note afore-
described of $15,000, which was thereupon cancelled and delivered up to
the maker.

"This act of substitution was never recorded, nor has *any* evidence of this
transaction been placed on the records of the mortgage office."

The opponent is the holder of three of the substituted notes for $1000 each,
and claims the benefit of the *Van Ostern* mortgage recorded on the 25th March,
1851.

The plaintiff contends that, as to him, the mortgage no longer exists, be-
cause what is styled the act of substitution was never inscribed on the mort-
gage book.

We are of opinion with the District Judge, that no registry of that act was
necessary, because the original mortgage was never erased, released, or extin-
guished.

The second act recites, that "whereas, by act passed before the undersigned
notary on the 25th day of March last, the appearer, *Ann Matthews,* motgaged
and hypothecated in favor of *Benjamin Van Ostern* the following property,

30

&c., to secure the payment of a certain promissory note of $15,000, dated on the 25th of March last, and payable in one year, and if not paid at maturity, to bear interest therefrom at the rate of 8 per cent. per annum, until paid. And whereas the said *Benjamin Van Ostern* is desirous of obtaining, in lieu and stead of said note of $15,000, the fifteen several notes of said appearer for the sum of $1000 each, payable at the same period as the one presently held by him, with which request she is willing to comply: Now, therefore, the said *Ann Matthews* did make and subscribe to the order of, and endorsed by herself under date of this day, (25th April, 1851,) and payable on the 25th March, 1852, and if not paid at maturity, to bear interest therefrom at the rate of 8 per centum per annum, until paid, fifteen promissory notes of the sum of $1000 each; which said notes, after having been duly countersigned, *ne varietur*, by me notary, in order to identify them herewith, have been delivered to the said *Benjamin Van Ostern*, who, being here present, acknowledges the receipt thereof: and the said *Van Ostern* did thereupon deliver to the said Miss *Matthews* the above described note of $15,000, subscribed by her, and I, notary, did, at the request of said parties, erase the signature of the said Miss *Matthews* to said note, and at their request have annexed the same to the margin hereof for reference.

And, thereupon, the said Miss *Ann Matthews* declared that the substitution of the said fifteen notes for the one previously subscribed by her, shall not in any manner affect or impair the validity of the mortgage granted in favor of the said *Benjamin Van Ostern*, and that the holder or holders of said notes shall be entitled to all the rights and benefits, privileges, claims and actions of, in and to the said mortgage, as amply, &c., as if they had been fully set forth and described in said act of mortgage at the time of the execution thereof."

Here there does not seem to have been an intention to create a new debt, but simply to make a change of form in the evidence of an old one; and even the form of the instrument which evidences the debt is unchanged, with this exception only, that one negotiable note for $15,000 is divided into fifteen notes of the same tenor, for $1000 each; the consideration, the parties, the term, the total amount, the interest, and the security, are still the same.

No new mortgage is created; but *Van Ostern*, the original mortgagee, expressly reserves the benefit of the first mortgage to himself, as a security for the fifteen notes, which, for convenience, he had taken in lieu of the former note. No new parties intervened in the second act; the evidence of the debt in both instances, being negotiable in its form, the mortgage taken by *Van Ostern* as the first holder, would of course enure to the benefit of all subsequent holders, whether it were so stated in the act or not: "The sale or transfer of a debt includes every thing which is accessary to it, as suretyship, privileges, and mortgages." C. C., 2615.

It does not appear whether the original act of mortgage stipulated that the holder of the large note should be entitled to its benefits, for we have not a full copy of that act in the record; but it is immaterial, for such a stipulation would be implied; and that part of the clause of reservation in the second act may be rejected as surplusage, without impairing the rights of the opponent.

She must necessarily hold the notes through and under *Van Ostern*, for the authentic act informs us that they were delivered to him as the first holder, and they were drawn in such a form as to pass by delivery.

The plaintiff has no equity in his favor, for the registry of the act under which the opponent is entitled to exercise her rights, notified him that the property of his debtor was encumbered by a special mortgage for $15,000, before he procured his judgment; it did not concern him to know whether that debt was evidenced by one note or by fifteen; "Car que lui importe que l'hypothèque qui le prime, s'applique à telle dette ou à telle autre dette; elle n'aura pas plus d'effet dans un cas que dans l'autre." Such are the remarks of *Marcadé*, (Vol. 4, No. 778,) touching a case where the debt is actually novated, but with a reservation of the privilege or mortgage security attached to the first credit; they apply with greater force to a case like the present, where there is a mere change of form in the evidence of the debt, with a similar reservation as to the mortgage by which it is secured.

The judgment is, therefore, affirmed with costs.